Mr. Chief justice TANEY
 

 delivered, the opinion of the court.
 

 ,This is a writ of -error to the Supreme Court of the State of •Louisiana;
 

 It appears that á petitory action was., brought by Scudday, .the defendant in- error, against Shaffer, the plaintiff in error, to recover a quarter section of land described in the pleadings.
 

 The defendant in error derives his title-in the following manner: By the eighth section of an act' of Congress of the 4th - .September, 1841, the Government of the United States granted ■ .to'each of the; several States specified in the act, and among, ¡them to Louisiana, 500,000 acres of land, for the purposes of, internal improvement. . The act provided, that the selections of the land were to be made in su’eh manner as the Legislature-of -the 'State should direct, the' locations to be made on any public lands, except such as were or might.be reserved from sale by. any law of Congress, or proclamation of the President of the,United States. The ninth section of the act provided that the net .proceeds of the sales of the lands so granted Should' be applied to objects of internal improvement within the State, such as roads, railways; bridges,‘.canals, and improvement of watercourses and draining of swamps. ■ An.actofthe Legislature of Louisiana-of 1844 provided that warrants for the location of the lands should be sold in. the same manner as the-lands. were-loéated; and it was made the duty of the Governor to issue patents.for the lands located by warrants, whenever he should be- satisfied,¡that they had been properly.located. The defend-, .ant in .error,- ¡-being the. holder of such a warrant, located it on
 
 *19
 
 the land claimed in, the suit. The. location having been approved bj the Secretary of the Interior, and a certificate to that effect granted by the register, the Governor of Louisiana issued a patent to the plaintifl, bearing date 12th November, 1852.
 

 The opposing title of plaintiff in error is derived under an act of Congress of March 2d, 1849, and certain acts of the Legislature of the State, passed to carry into effect, the act of Congress. The first section of the act of Congress of 1849 declares, “ that to aid the State of Louisiana in constructing the neces-. sary levees and drains to reclaim'the swamp and overflowed lands therein, the whole of the swamp and overflowed lands which are or may be found unfit for' cultivating, shall,be, and the same aré hereby, granted to the State.”
 

 , The second section provides, that as. soon as the Secretary of the Treasury shall be advised by the Governor of Louisiana that the State has made the necessary preparations to defray the ex- ' penses 'thereof, he' shall cause, a personal examination tó be made, under the direction of "the surveyor general-thereof, .by experienced and faithful deputies, of all the swamp lands therein which are-subject to overflow and. unfit- for cultivation, and a . list of the same to be made out and certified by the deputies' and the 'surveyor general to the Secretary of the Treasury, who shall approve the same, so far as .they are not clainaed and held by -individuals; and on that approval the fee- simple to said • lands shall vest in the. State of Louisiana, subject to the disposal of the Legislature thereof,;provided, however,’ that the, proceeds of -said lands shall be-applied exclusively, as far as necessary, to the construction of the levees and drains aforesaid.
 

 On the 21st of March,. 1850, the- Legislature of Louisiana-passed an act to. enable the Governor 'to 'have the swamp and, overflowed lands selected;' and, in 1852, they passed an act, giving a preference in entering such lands to those in possession of or cultivating them, and the time of entering them was further ■ . extended by an act of 1858. The plaintiff in -error entered this • land on. the 18th day of July, 1858, by ..virtue of a preference-right claimed under that act of the' Legislature. He was permitted to make this entry át the State land office, inconsequence of the Secretary of the Interior having, on the 14th of April, revoked his approvalto-the State under the act of 1841, of this and other lands- which had been located under warrants sold by the State, in conformity to the act of the Legislature of 1844.
 

 .' -. The reason assigned by the Secretary of me Interior was,that these locations had been made subsequent to. the passage of the act of Congress of 1849, granting to the'State all'tne swamp and overflowed lands. He states, in his opinion,, that he considered the words' used in the fiyst Section of that act. as
 
 *20
 
 importing a-grant
 
 in presentí,
 
 and as confirming a right to the land, through, other proceedings were necessary to perfect the title; and mat when the title w;as perfected, it had relation back . to' the ■ date of the grant. • His approval to the S^ate, of the location of the land in. controversy, under the internal-improvement law Of 1841, was revoked, but the land was at the same time approved to the State, as having a vested .title to it, under the act of 1849, and taking effect from the date of the passage of the act.' ■ ■
 

 . . The controversy between the parties arises upon these two patents, both granted by. the State of Louisiana — the one to 'Scudday, .under the. grant made by the act of Congress of 1841, 'for the purposes of internal improvement; the other to Shaffer, under the grant made by the act of 1849, for the purpose of draining the swamp lands.
 

 The' case *came regularly before the Supreme Court of the State.; .and that court, after stating that it was unnecessary to decide whether the construction, placed upon the act of 1849, by the Secretary, of the Interior, under which he revoked his ■' approval of Séuddáy’s location,'was-erroneous or .riot,- proceeded to express their opinion as follows:
 

 - “'It is certain (say the court) that the Legislature could not have disposed of the. land as belonging to' the State, under the .provisions of that act, [the act'of 1849,] until she had complied-with the conditions imposed on her by the act of Congress, and' until the approval pfthe Secretary of the Treasury;• hut if she had not chosen.to' avail, herself of the right given to her to ■ appropriate these lands .as swamp lands by defraying the expenses of locating tijem, she had still-the right of locating them under the internal-improvemént-law of 1841, which - was un-, conditional. .. The. construction of the'act of 1849, .by the 'Secretary of'the. Interior, maybe strictly correct; and yet it -does riot'follbw that the location of- á warrant, under the internal-improvement- law of 1841, which had been approved by the proper department ,of the Government; and for which a patent: had been subsequently -issue'd by the State, could he reyoked, so as to destroy the title conferred by the patent. ■ The question would have been- different, if, after the' passage by Congress of the act' of, 1849, the United States had granted the land away from the State of Louisiana. - Such1 was not ■ the case; and as both the acts of 1841 and of 1849 Were grants of land to-the State,-we cannot, go behind the patent which the-State has granted. The patent;ban' only be attacked on the grourid of error or" fraud. It is true that a patent issued against, law is void; but in the present case the patent arid all ' the proceedings on whibh it was based were in conformity to
 
 *21
 
 the laws. As between the Government of the'United States and the State of Louisiana, a question will arise, whether the State is not entitled to an additional quantity of land, to he located under the act of Congress of 1841, in consequence of the .swamp lands having bpen appropriated for locations of warrants issued under the internal-improvement act; but' we are of opinión that the title which thé State has granted to the plaintiff, and for which she’ has been paid, is unaffected by the acts of the officers of the United States Government and of the State ■ Government, done since the patent was issued.”
 

 Upon these grounds, the Supreme Court of the State -gave judgment in favor of Scudday, and this writ of error is brought to revise that decision. .
 

 It does not appear from the opinion of the court, as above stated, that any question was decided that would give this court jurisdiction over its judgment. The land in dispute undoubtedly belonged to the State, under the grants made by Congress, and both parties claim title under grants from the State. The construction placed by the Secretary upon the. act of 1849, and the revocation of his order approving the location of Scudday, did not and was not intended to re-vest the land in the United States. On the contrary, it affirmed the title of the State; and its only object was "to secure to Louisiana the full benefit of both of the grants made by Congress, and leaving it to the State to . dispose of the lands to such persons and in such manner as it should by law direct. It certainly gave no right to the plaintiff in error. He admits the title of the State, and claims under a patent granted by the State. Now, whether -this patent eonveyed tohim átitle or not, depended altogether upon the laws of Louisiana, and not upon ¡the acts of Congress ortheaets of any of the officers or authorities of the-General ■Government. It was a question, therefore, for the State courts. And the Supreme-Court of the State have decided that this patent could convey no right to the.land in question, because the State- had. parted from its title by a patent previously granted to Scudday, the defendant in error.' The right 'claim* ed by the plaintiff in error, which was denied to him by the State'court, did not therefore depend upon any act of Congress,, or the validity of any authority exercised under the United States, but exclusively upon the laws of Louisiana. - And the Supreme. Court of .the State have decided .that, according to these laws, he had no title, and that the land in question b§-' ■longed to the grantee of the elder patent.'
 

 "We have no authority to revise that judgment by writ of error; and, this writ must therefore be dismissed for want of-jurisdiction. . '' 1