**Affirmed and Opinion filed August 20, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00177-CR

### MELVIN EUGENE FLETCHER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1376099**

## O P I N I O N

Appellant Melvin Eugene Fletcher was charged with felony theft of metal after a police officer witnessed him taking copper from a business. At a hearing before trial, appellant waived his right to counsel. He was subsequently convicted and sentenced to seven years in prison. Appellant raises two issues on appeal.

In his first issue, appellant argues that his waiver of his right to counsel was ineffective because the trial court failed to inform him of the possible defenses and mitigating circumstances and because the trial court did not conduct further inquiry into

his competency after he raised an invalid defensive theory. We conclude that the trial court's questions and admonitions ensured that appellant's waiver was competent, knowing, intelligent, and voluntary.

In his second issue, appellant argues the trial court abused its discretion by finding him competent to conduct his own defense at trial. Appellant asserts that a constitutional mental-illness limitation on the right of self-representation required the trial court to insist that he proceed with the assistance of counsel. We conclude that no inquiry beyond appellant's competence to stand trial was constitutionally required, but in any event there is evidence to support an implied finding that appellant was also competent to conduct his own defense. We therefore affirm.

## BACKGROUND

While working a second job for Electric Power Design, Officer Rudy Deleon of the Houston Police Department saw appellant steal copper from the business. Appellant was indicted for felony theft of metal. Attorney Jamie Sulla was appointed to represent appellant.

Subsequently, the presiding judge ordered a psychiatric examination of appellant. As evidence, the judge cited the following statement, presumably from Sulla: "client cannot communicate with me. He doesn't understand any questions I ask." The resulting report indicated that appellant was receiving medication and required fourteen days to stabilize. Approximately two months later, Sulla filed a motion requesting a psychiatric evaluation for competency. Sulla stated the following reason for the request: "[T]he client cannot communicate appropriately with [me.] [H]e has random[,] jumbled thoughts[.] [He] wants to be referred to as property and not a person." The trial court granted the motion and issued an order directing the Harris County Forensic Services to determine whether appellant was competent to stand trial.

Dr. Stephen McCary, a psychologist licensed by the Texas State Board of

2

Examiners of Psychologists, conducted the examination. McCary's report reveals that appellant did not participate in the competency evaluation. Appellant suggested that McCary instead use records and other jail sources to gather information.

McCary spoke with several detention officers. Officer Henley conceded that he had "very limited information" to provide but stated that he had encountered "no problems in dealing with [appellant]." Officer Ballard stated that appellant "did not demonstrate any bizarre or unusual behaviors." Appellant "interacted with the other inmates[.] He played games such as chess, he wrote or read letters, and he watched television." Ballard stated appellant could follow "basic instructions if he chose to do so." Appellant did, however, make "inappropriate, rude sexual comments to female staff." Officer Gladney informed McCary that appellant "spent a lot of time in bed" and "tended to stay to himself." Appellant "interacted with other inmates a few times." Appellant followed instructions and "exhibited ordinary inmate behavior." He did not demonstrate "any inappropriate or unusual behaviors."

McCary also examined appellant's jail medical records, which indicated that appellant was taking medication to control a seizure disorder. McCary noted appellant had been prescribed an anti-depressant drug and an anti-anxiety drug. Appellant's records also indicated appellant had a history of marijuana and alcohol abuse. McCary concluded the report by stating that jail medical records indicated appellant had exhibited the following behaviors within the past three months:

> feedback from psych techs reveal Patient to be in no acute distress and interacting with others and watching TV; reported by staff as eating well and sleeping well; appeared anxious, barely making eye contact, acting as if internally distracted, uncooperative with exam; volunteered without asking "I was molested as a child"; claiming he is paranoid and hearing voices and seeing shadows; not on anti-psychotics, thought process was goal-directed; no evidence of bizarre statements or looseness; he is laughing and talking with other inmates; Patient was closely observed during his admission to inpatient unit and not observed to have signs of psychotic disorder; at one point he became angry and asked "why am I

3

here"; the necessity of good communication with lawyer was reviewed and the consequences of malingering were briefly discussed; Patient terminated the interview abruptly and walked out of the room . . . .

McCary diagnosed appellant with anxiety disorder, cannabis abuse or dependence, alcohol abuse or dependence, antisocial personality disorder, and malingering. He stated that appellant demonstrated signs of mental illness but concluded appellant's mental illness impaired him only to a "mild degree." McCary found appellant competent to stand trial.

Approximately six weeks later, appellant filed a handwritten motion purportedly waiving his right to counsel and requesting to proceed pro se.[1] Nine days later, Sulla filed a motion to withdraw as attorney because appellant filed a complaint with the state bar against her and "made inappropriate comments . . . of a personal nature" in a letter. The trial court granted Sulla's motion to withdraw. The court conducted a hearing pursuant to defendant's request to waive counsel and proceed to trial pro se. At the conclusion of the hearing, the trial court granted appellant's request.

Because they are relevant to appellant's issues on appeal, we discuss several of the pretrial motions filed by appellant after the trial court granted his request to proceed pro se. Almost two months after his request was granted, appellant filed a two-page handwritten motion entitled "Legal Notice Name Declaration Correction and Publication." The motion begins:

> I Melvin Fletcher Al, being duly affirmed, standing squarely, Declare and Proclaim upon Divine Law; Nature's Law; Universal Law; Moorish Birthrights; International Law; and Constitutional Law; Declare and say: I, being previously Identified by the Union States Society of North America – U.S.A. under the colorable, word-ship name Melvin Fletcher, do hereby refute the fraud; make Public and Publish my Corrected National Name; Declare and Affirm my true Proper Person Status; and reclaim my rightful

---

[1] The document is titled "Faretta Warnings Waiver Of Court Appointed Counsel Court Findings And Order Allowing Defendant To Proceed Pro Se."

4

Social and Cultural Life of the State . . . .

The motion continues along these lines.

The same day, appellant filed another handwritten motion entitled "Judicial Notice and Proclamation To All Elected United States Republic Officials and Public Servants of Federal, State, City and Municipal Governments, Personnel and Corporate Entities Concerning the Constitution and all Statutory and Civil Law Codes of the Lant [sic] etc. know All Men by These Presents: Disclaimer." In the motion, appellant asserts that he is "a Noble of the Al Moroccan Empire (North America)" and appears to argue that the United States has no jurisdiction over him. The motion cites the United States Supreme Court's opinion in *Dred Scott v. Sandford*, 60 U.S. 393 (1856), for the proposition that African Americans "whether held in slavery or free were not included and were not intended to be included in the United States Rights Republic Jurisdiction."

Appellant also filed a motion entitled "Final Notice! Judicial Notice and Proclamation Motion to Dismiss – Notice of Intent to Impose Penalties." He reiterated his Moorish ancestry and argued that he "retain[ed] all substantive rights and Immunities from taxation and from Criminal and Civil Jurisdiction by and of the U.S.A."

The trial court issued an order granting a second motion for psychiatric examination. Dr. McCary once again examined appellant to determine whether he was competent to stand trial.[2] Appellant again declined to participate in the evaluation. McCary wrote appellant appeared

> irritated and he was resistive. He also shook his legs in a nervous manner. He commented that the Judge was surprised by an effective defense that he had developed regarding his case and he commented that this is why he was referred for a competency evaluation. He said that he believed that the Judge was "stalling" by ordering a competency evaluation for him. He

---

[2] In the interim, appellant filed two more motions reiterating the arguments raised in his prior motions. The motions were filed on November 20, 2013.

stated that he does not think that he has any problems that would warrant his undergoing a competency evaluation. (He asserted, "I've got all my faculties.")

McCary contacted Detention Officer Trater, who reported that appellant had not exhibited any bizarre or unusual behaviors. Appellant generally kept to himself, had not caused any problems, and did not interact with other inmates. McCary ruled out malingering as a possibility. He concluded that appellant's mental illness impaired him to a "mild (moderate) degree." Based on the new information from Trater and the prior information from the other detention officers, McCary deemed appellant competent to stand trial.

At trial, appellant appeared pro se before a different judge. The trial court opened the proceedings by announcing, "This is Cause No. 1376099, State of Texas vs. Melvin Eugene Fletcher." Appellant asserted, "No, sir. This Court cannot force an acquiescence upon me to an artificial construct. There's no statute of limitations on fraud and that's what the states are committing and surreptitiously incorporating me through – ." The court interrupted, asking: "You're not Melvin Eugene Fletcher?" Appellant responded:

> Melvin Fletcher is a fiction created by the corporate state of Illinois. He does not have a nationality. I have a nationality. I'm a Moors Aboriginal indigenous to northwest Amexem. I'm being subjugated to an alias subjugation. I'm not the same nation, jurisdiction, custom, or national peers. The State cannot hold judgment on me. This is all in the court, the Decolonization Resolution 1514, of which –

The trial court again interrupted appellant, stating that "For the purposes of the court today, you are Melvin Eugene Fletcher." Appellant and the trial court had an exchange in which appellant reiterated some of his jurisdictional arguments and demanded to see the trial court's "oath of office." The court denied appellant's demand and attempted to proceed, but appellant stated he did not consent to trial. After another series of exchanges, appellant finally stated: "If you're going to force me to go to trial, I guess I

have no other out then."

The trial court read the indictment and asked for appellant's plea. Appellant responded that "[t]here's definitely a conflict of identity here," and the trial court entered a plea of not guilty. When asked whether he wanted punishment assessed by a jury or the court, appellant stated that he did not "consent to any claims that are devoid of any true identity personages." The trial court explained to appellant that if he did not request that punishment be determined by the jury, the court would assess punishment. Appellant responded with his jurisdictional arguments. The court then stated that it would assess punishment. Appellant asked to submit four "writs" and asked the court to read the documents into the record. The court accepted the writs but denied the request to have the documents read into the record.

During voir dire, appellant repeated his jurisdictional arguments before the panel members. After initially allowing appellant to present his theory, the State objected on the grounds that appellant was discussing "matters outside the proceedings of voir dire." The court sustained the objection, but appellant nevertheless proceeded at some length until he was interrupted by a venire member. Appellant essentially used all of his time to discuss his jurisdictional argument before the panel. Once his time ended, the trial court told the panel members that a judge had previously found appellant able to represent himself. The court explained to the panel that appellant had been found competent to stand trial by a psychologist, to which a venire person responded that he would "like to know the name of the psychologist" and whether "he know[s] the definition of competent." Appellant did not exercise any strikes but instead requested a "jury of my national peers, active Moors." The jury was subsequently seated and the trial commenced.

Appellant briefly mentioned his nationality again at the beginning of the guilt-innocence phase and demanded to see the judge's oath of office. He also cross-examined three witnesses, posing questions related to the facts of the case. During his

7

closing argument, appellant did not raise his jurisdictional defensive theory but instead attacked the State's evidence. The jury found appellant guilty.

At the punishment phase, the trial court asked appellant if he would plead "true" or "not true" to the enhancement paragraphs. Appellant did not enter a plea but instead repeated his prior jurisdictional arguments. The State called a fingerprint expert to prove the enhancements and appellant objected to admission of the State's Exhibits 2 through 20, once again raising his jurisdictional defense. He reiterated his defense when the court asked if he would like to present any evidence. The trial court found the enhancement paragraphs true and sentenced appellant to seven years in prison. This appeal followed.

**ANALYSIS**

## I. Appellant competently, knowingly, intelligently, and voluntarily waived his right to counsel.

In his first issue, appellant argues that he did not competently, knowingly, intelligently, and voluntarily waive his right to counsel.[3] Appellant asserts his waiver is invalid because the trial court failed to admonish him properly and failed to inquire about his competency to waive the right.

### A. Applicable law

The Sixth Amendment right of an accused in a criminal proceeding to effective assistance of counsel extends to the States through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963); *see* U.S. Const., amends. VI, XIV. The right to counsel may be waived if the defendant desires to represent himself. *Faretta v.*

---

[3] Appellant poses this issue as a challenge to the sufficiency of the evidence to find his waiver was knowingly, intelligently, and voluntarily made. In *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997), the Court of Criminal Appeals was presented with a case in which the defendant seemingly challenged his waiver of counsel on legal sufficiency grounds. The Court did not, however, examine the issue under the legal sufficiency standard of review. Instead, the Court examined whether the waiver was knowing, intelligent, and voluntary. We follow *Collier*'s approach in this case.

*California*, 422 U.S. 806, 833–36 (1975) (recognizing a defendant's "constitutional right to conduct his own defense" that prevents a State from "compel[ling] [him] to accept a lawyer he does not want"). To be constitutionally effective, the waiver of counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997) (citing *Godinez v. Moran*, 509 U.S. 389, 400–401 (1993); *Faretta*, 422 U.S. at 834–836). The competence that is required of a defendant seeking to waive his right to assistance of counsel is the competence to waive the right, not the competence to represent himself. *Prather v. State*, 238 S.W.3d 399, 403 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Godinez*, 509 U.S. at 399). The decision to waive counsel and proceed pro se is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel being abandoned, as well as the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835–36; *Cudjo v. State*, 345 S.W.3d 177, 184 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The decision is made "voluntarily" if it is uncoerced. *Godinez*, 509 U.S. at 401 n.12.

The record must contain proper admonishments concerning self-representation and inquiries of the defendant that allow the trial court to assess his knowing exercise of the right to defend himself. *Prather*, 238 S.W.3d at 403. If such factors are not otherwise apparent from the record, a trial court's inquiry regarding the accused's waiver of counsel should center on his background, age, experience, and education. *Cudjo*, 345 S.W.3d at 184 (citing *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988)). The accused should be aware there are technical rules of evidence and procedure and that he will not be granted any special consideration solely because he asserted his pro se rights. *Cudjo*, 345 S.W.3d at 184. The trial court, however, need not follow formulaic questioning or a particular script in ascertaining the knowing and voluntary nature of an accused's waiver of counsel, and a written waiver of the right to counsel is not required. *Id.*

**B.    The record supports the trial court's acceptance of appellant's waiver.**

The trial court judge hearing appellant's motion to waive counsel and proceed to trial pro se informed appellant that he was charged with the state felony of theft of metals that was enhanced with two prior felonies. He told appellant that if convicted, he would face between two and ten years in prison, and a fine not to exceed $10,000. The court asked appellant if he understood the charges. Appellant initially answered by raising his jurisdictional arguments, but the trial court quickly focused appellant on the issues at hand. Appellant then told the court that he understood the charges and the range of sentencing. The court responded:

> I've been doing this job for 27 years now and 133,000 cases. I've had 10 people do what you're about to do. . . . They've all lost the case miserably. You're not going to win this thing. This is a very bad choice but a choice you're entitled to make if you choose to do so.

The court learned that appellant was thirty-seven years old, could read and write English, and had completed the eleventh grade in high school. Appellant told the court he had no learning disabilities or handicaps and that he had never been declared mentally incompetent. The court explained to appellant that he had a right to a court-appointed lawyer and that if he waived that right, he would likewise be waiving the appellate issue of ineffective assistance of counsel. Appellant was informed that he would be held to the same standard as a licensed attorney and would not receive special treatment. Appellant claimed that he was familiar with the Penal Code section charged, the Code of Criminal Procedure, and the Rules of Evidence. Appellant stated he was aware of the dangers of self-representation.[4] The court then allowed appellant to represent himself but cautioned that he thought "this is the worst decision . . . you'll ever make in your young life." Appellant signed a form indicating he received the

---

[4] Appellant asked for standby counsel, and the court granted the request during the hearing. No indication of standby counsel appears in the trial record, however. Any failure to provide standby counsel has not been raised as an issue in this appeal.

10

*Faretta* warnings. The judge gave appellant one last chance to change his mind, but appellant reiterated his desire to represent himself.

Based on this record, we cannot say that appellant's decision to proceed pro se was anything less than knowing and intelligent. The judge inquired into his age, background, experience, and education. *Cudjo*, 345 S.W.3d at 184. Appellant was informed that he would have to abide by the formal rules of evidence and procedure and that he would not be afforded special treatment. *Id.* The trial court explained the charge against appellant and the possible range of punishment, and it informed appellant that his decision to waive counsel was poor and that it was likely the worst decision he would make in his entire life. *See Collier*, 959 S.W.2d at 626 (finding valid waiver after noting similar admonishments and stating "the trial court tried repeatedly to impress upon appellant the extreme gravity of his request to proceed pro se and the likelihood that it was a serious mistake"). Appellant was thus informed of the dangers of self-representation, and he conceded that he was aware of the dangers during the hearing. Moreover, nothing in the record indicates that appellant's waiver was coerced and therefore involuntary.

Appellant argues his waiver was nevertheless ineffective. He asserts that the judge was required to conduct further inquiry into his competency because he raised invalid jurisdictional arguments during the *Faretta* hearing, he was receiving medication to treat anxiety and depression at the time, and his original trial counsel had requested a competency evaluation. According to appellant, *Blankenship v. State*, 673 S.W.2d 578 (Tex. Crim. App. 1984), required the trial court to further apprise itself of his mental state in assessing his competence to waive counsel.

During the *Faretta* hearing, appellant was generally responsive to the questions posed. The judge asked appellant whether he had ever been deemed incompetent, and appellant responded that he had not. Indeed, appellant had been found competent to stand trial. Appellant complains that McCary made the competency determination

largely without speaking to him, but McCary attempted to speak to appellant and appellant refused. We decline to hold that criminal defendants can obtain a new trial by refusing to participate in competency evaluations before trial and then arguing on appeal that the competency evaluation was defective due to their non-participation.[5] Moreover, McCary spoke with several detention officers and reviewed appellant's medical records, which revealed that appellant was receiving treatment for anxiety and depression, and McCary nevertheless determined appellant was competent to stand trial. Appellant has not argued that McCary's determination was erroneous, and appellant cites no authority for the proposition that his treatment for anxiety and depression made his waiver of counsel ineffective.

Appellant's misunderstanding of the law is not dispositive of his competency to waive counsel, as the competence required of a defendant seeking to waive his right to assistance of counsel is the competence to waive the right, not the competence to represent himself. *Prather*, 238 S.W.3d at 403 (citing *Godinez*, 509 U.S. at 399); *see also Faretta*, 422 U.S. at 836 ("We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself."). The judge was thus not required to inquire further into appellant's competency merely because appellant raised his invalid defense during the hearing. We also note that every time appellant raised his jurisdictional defense, the judge at the *Faretta* hearing was able to focus appellant on the relevant issues. The judge was in the best position to determine whether appellant's waiver was constitutionally effective, and the record supports his determination. *See Williams v.*

---

[5] *Cf. Robinson v. State*, 16 S.W.3d 808, 813 n.6 (Tex. Crim. App. 2000) ("[I]t is axiomatic that a defendant who chooses to forgo the assistance of counsel and represent himself at his trial also necessarily waives his right to complain on appeal that he was rendered ineffective assistance." (citing *Faretta*, 422 U.S. 806 at 835)).

*State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) ("The trial judge is responsible for determining whether a defendant's waiver [of counsel] is knowing, intelligent, and voluntary.").

Appellant also misplaces his reliance on *Blankenship*. In that case, the Court of Criminal Appeals held that the trial court erred by *not* allowing the defendant to represent himself. *Blankenship*, 673 S.W.2d at 585. In addition, *Blankenship* did not involve an individual with a mental illness. Instead, the case centered on a criminal defendant whose assertion of the right to self-representation was denied because the trial court concluded he was unqualified due to a lack of legal proficiency. *Blankenship*, 673 S.W.2d at 584 ("While we may agree that the [defendant] flunked the trial court's impromptu evidentiary and procedural 'pop quiz,' the court's ruling that appellant was unqualified in that his lack of proficiency negated a 'knowing and intelligent' waiver, was an improper ground for denial of appellant's right to self-representation."). We thus disagree with appellant that *Blankenship* required the trial court to conduct further inquiry into his competency.

Appellant also argues that his waiver was ineffective because the trial judge failed to advise him of "the nature of the charge, the statutory offenses included within it, the range of allowable punishment, the impact of the enhancement paragraphs, the possible defenses to the charge, and any mitigating circumstances." In support of this contention, appellant points to the Court of Criminal Appeals' opinion in *Blankenship*, 673 S.W.2d at 583–84, and a plurality opinion of the Supreme Court of the United States in *Von Moltke v. Gillies*, 332 U.S. 708, 724–25 (1948).

Under the circumstances of this case, we disagree that the trial court's admonitions were insufficient to support a knowing and intelligent waiver. The trial court did inform appellant that he was charged with a felony, the statutory offense of theft of metals, and that he could be sentenced to up to ten years in prison if convicted. A similar admonition was held sufficient in *Collier*, 959 S.W.2d at 626.

Appellant asserts that the trial court was nevertheless required to inform him of possible defenses to the charge and any mitigating circumstances. In addition, when the facts of the case indicate that a defendant plans to mount an unmeritorious defense, appellant contends the trial court is required to correct a defendant's misunderstanding of the law.[6] We disagree.

Appellant has not pointed us to any possible defenses or mitigating circumstances of which the trial court failed to advise him. Moreover, *Blankenship* makes clear that "no formulaic questioning" or "script" is required to establish a knowing and intelligent waiver. 673 S.W.2d at 583. Neither *Blankenship* nor *Von Moltke* held that a trial court's admonitions were insufficient because the court failed to investigate and present possible defenses and mitigating circumstances, or failed to advise a defendant that a defense he planned to present was not legally viable.[7] Rather, *Blankenship* held that the trial court had erred by forcing counsel on a defendant on the ground that he lacked understanding of the law and was not qualified to represent himself. 673 S.W.2d at 584. *Von Moltke* involved an unrepresented German defendant who pleaded guilty to espionage after routine questioning by the trial court and without being advised at all of the consequences of her plea (including a possible death sentence). 332 U.S. at 709–10,

---

[6] To further support his contention that the court was required to inform him of the viability of his defense, appellant filed a letter brief after oral argument pointing us to an unpublished order issued by U.S. Circuit Judge Richard Posner sitting as a District Judge of the Northern District of Illinois. The order does not address whether a trial judge must inform criminal defendants attempting to waive counsel and proceed pro se of the merits of their defensive theories. Instead, Judge Posner states that a "defendant who has the cognitive ability to represent himself in a legal proceeding but refuses to confine his defense to testimony and other evidence, and to argument, that are permissible in a legal proceeding—refuses in effect to cooperate with the court and obey the law governing the proceeding— forfeits his right to defend himself." Judge Posner's order is based on the defendant's repeated injection of frivolous arguments into the proceedings after receiving warnings from the court. Nowhere does Judge Posner suggest that a judge may not accept a criminal defendant's waiver of counsel unless he informs the defendant of the merits of any defenses mentioned during the *Faretta* hearing.

[7] *See Alcontor v. State*, No. 11-07-00233-CR, 2009 WL 481864, at *5 (Tex. App.—Eastland Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication).

717–18. In addition, the defendant in *Von Moltke* did not assert a right to self-representation, and *Faretta* does not require a trial court to inform a defendant of possible defenses or mitigating circumstances before that right can be exercised.

Appellant also relies on *Buster v. State*, a case from the Tyler Court of Appeals. In *Buster*, the court of appeals held the defendant's waiver was inadequate because, among other things, the judge did not advise the defendant of the possible defenses to the charges and mitigating circumstances. 144 S.W.3d 71, 77 (Tex. App.—Tyler 2004, no pet.) (citing *Blankenship*, 673 S.W.2d at 583). *Buster* differs from our case, however, because the record in *Buster* did not show that the defendant was advised of the nature of the charges against him and the statutory offenses included within those charges. 144 S.W.3d at 77. The trial court further did not inform the defendant of the range of possible punishments, that he would not be afforded special treatment, and that he would "not be granted any relief from the technicalities of the rules of evidence and procedure." *Id.*

Because the trial court admonished appellant regarding each of those matters in our case, we hold that appellant validly waived his right to counsel. We overrule appellant's first issue.

## II. The trial court did not abuse its discretion by permitting appellant to conduct his own defense at trial.

In his second issue, appellant argues that even if he was competent to waive his right to counsel, the trial court abused its discretion by finding him competent to represent himself at trial.

### A. Standard of review

The trial judge is in the best position to determine whether a mentally ill defendant is competent to proceed pro se. *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). Because competence is a mixed question of law and fact that

turns on an evaluation of credibility and demeanor, we review the trial judge's ruling for an abuse of discretion. *Id.* We afford almost total deference to a trial judge's rulings on mixed questions of law and fact when the resolution of the issue turns on an evaluation of credibility and demeanor. *Id.* We view the evidence in the light most favorable to the trial judge's ruling. *Id.* We will imply any findings of fact supported by the evidence and necessary to support the trial judge's ruling. *Id.*

## B. Applicable law

The Constitution permits judges to take realistic account of the particular defendant's mental capacities in deciding whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008). An individual may well be able to work with counsel at trial and thus satisfy the competency standard of *Dusky v. United States*, 362 U.S. 402 (1960), yet at the same time be unable to carry out the basic tasks needed to present his own defense without the help of counsel. *Edwards*, 554 U.S. at 175–76. Proceedings must not only be fair, they must appear fair to all who observe them. *Id.* at 177 (quoting *Wheat v. United States,* 486 U.S. 153, 160 (1988)). The Constitution thus "permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards*, 554 U.S. at 178.

## C. Although not constitutionally required, there is evidence to support an implied finding that appellant was competent to conduct his own defense.

Appellant argues that under *Edwards*, the trial court abused its discretion in finding him mentally competent to conduct his own defense at trial. At the outset, we note that no hearing was held on whether appellant was competent to conduct his own defense at trial and no explicit ruling appears in the record. McCary twice found appellant competent to stand trial, and the judge at the *Faretta* hearing determined that

16

appellant competently waived his right to counsel. According to appellant, *Edwards* required the trial court to make a separate determination of his competency to conduct his own defense, which differs from his competency to stand trial or waive counsel. Appellant contends that, given his bizarre behavior, the trial court had a duty to further apprise itself of his mental state.

This case differs from *Edwards* in one important respect, however. *Edwards* decided whether the trial court improperly compelled a defendant diagnosed with severe mental illness to proceed with counsel. Appellant asks us to hold that *Edwards* means not solely that a trial court *may* insist on representation for defendants who are incapable of conducting trial proceedings due to severe mental illness, but also that a trial court *must* do so. We disagree that *Edwards* so holds.

In *Edwards*, the Supreme Court held that the Constitution "permits States to insist upon representation by counsel" for the subset of criminal defendants who are competent to stand trial but nevertheless unable to proceed pro se due to severe mental illness. *Edwards*, 554 U.S. at 178. The Constitution does not require States to impose counsel on this subset of defendants, however. *See, e.g.*, *id.* at 173; *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009) ("The Constitution *may* have allowed the trial judge to block [the defendant's] request to go it alone, but it certainly didn't require it."); *United States v. DeShazer*, 554 F.3d 1281, 1290 (10th Cir. 2009) ("*Edwards* itself reaffirmed that a court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial."); *see also Wright v. Bowersox*, 720 F.3d 979, 986 (8th Cir. 2013) ("[I]t would not be an unreasonable determination of clearly established federal law for the state court to decline to impose a heightened standard of competency, as *Edwards* announced no such requirement."). We therefore conclude that the trial court was not constitutionally required to conduct a further inquiry regarding appellant's competence to conduct his own defense once Dr. McCary found him competent to stand

trial.[8]

Moreover, even if such an inquiry were required, the trial court had discretion on this record to conclude that appellant was competent to conduct trial proceedings by himself. *Edwards* indicates that "severe mental illness" is a threshold requirement for mandating that a defendant accept the representation of counsel. 554 U.S. at 178. McCary concluded appellant suffered from a mild to moderate degree of mental illness, not from severe mental illness.

Furthermore, *Edwards* suggests that once a defendant is deemed competent to stand trial, the relevant inquiry in determining whether a court may insist on counsel is whether the defendant can "carry out the basic tasks needed to present his own defense without the help of counsel." *Id.* at 175–76. At trial, appellant cross-examined three of the state's four witnesses. He questioned Officer Deleon about the copper's chain of custody. He questioned Kim Yarbrough, an employee of Electric Power Design, about her ownership of the property, and due to appellant's questioning, Yarbrough conceded that she was not the owner of the copper even though she was named as the owner in the indictment. Appellant questioned Megan Schroeman, the Houston police officer who collected the copper at the scene, regarding perceived inadequacies in the State's evidence on the wire's approximate length and its value. During closing argument, appellant did not rely upon his jurisdictional defensive theory. Instead, he argued that the case should be dismissed due to certain deficiencies in the state's evidence.

Appellant responds by pointing to his unmeritorious jurisdictional defensive theory and the numerous motions he filed before trial as evidence that he suffered from

---

[8] We recognize that if evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the trial court at any time before sentence is announced, the court on its own motion must suggest that the defendant may be incompetent and hold an informal inquiry. Tex. Code Crim. Proc. Ann. art. 46B.004 (West Supp. 2014), art. 46B.005(d) (West 2006). New competency evidence did not come to the court's attention during trial in this case, however, and appellant does not argue he was incompetent to stand trial.

severe mental illness. But appellant's mistaken belief regarding the validity of his jurisdictional defense is not dispositive of whether appellant was competent to stand trial or conduct trial proceedings by himself,[9] particularly given the other evidence discussed above regarding appellant's trial performance and mild to moderate mental illness.

Because a separate inquiry regarding appellant's competency to conduct his own defense was not constitutionally required, and in any event there is evidence to support an implied finding that appellant was competent, we hold the trial court did not abuse its discretion by allowing appellant to conduct his own defense at trial. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.



/s/     J. Brett Busby
        Justice


Panel consists of Justices Jamison, Busby, and Donovan.
Publish — TEX. R. APP. P. 47.2(b).

---

[9] *See Guerrero v. State*, 271 S.W.3d 309, 312–14 (Tex. App.—San Antonio 2008), *rev'd in part on other grounds*, 305 S.W.3d 546 (Tex. Crim. App. 2009) (concluding similar defensive theory amounted to "no evidence whatsoever to suggest to the court that [the defendant] was not competent to stand trial" and therefore holding trial court did not abuse its discretion in failing to conduct a further competency inquiry); *see also Jones v. Norman*, 633 F.3d 661, 669 n.3 (8th Cir. 2011) ("Neither *Edwards* nor any other precedent empowers a trial court to conduct a searching inquiry into a defendant's ability to successfully represent himself before allowing him to proceed pro se.").

19