

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00676-CR

Gary L. **BAKER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR4875
Honorable Sid L. Harle, Judge Presiding

Opinion by:   Luz Elena D. Chapa, Justice

Sitting:        Karen Angelini, Justice
               Luz Elena D. Chapa, Justice
               Jason Pulliam, Justice

Delivered and Filed:  April 20, 2016

AFFIRMED

Gary Lynn Baker was convicted by a jury of three counts of aggravated sexual assault of a child and one count of indecency with a child by contact. The trial court sentenced Baker to life in prison on each count pursuant to the mandatory enhancement provisions of section 12.42(c)(2) of the Texas Penal Code. Baker appeals the judgment, arguing he did not voluntarily and intelligently waive his right to counsel, the trial court erred by not finding he was incompetent to represent himself, and the trial court erred by failing to initiate proceedings to determine whether he was competent to stand trial. We affirm the trial court's judgment.

**BACKGROUND**

When Baker's former stepdaughter, A.H., was fifteen, she told her mother, Josefina, that Baker had repeatedly sexually assaulted her over a period of years when she was younger. A.H. testified that Baker began assaulting her after he began living with her, her sister, and Josefina in Galveston, when A.H. was five or six years old. The assaults continued after they moved to San Antonio when A.H. was in the second grade and they occurred three or four times a week. The family left San Antonio and moved several places until Baker abandoned them in Las Vegas. They returned to Galveston, where Josefina gave birth to Baker's child in April 2004. Josefina and Baker married later in 2004 and stayed together until sometime in 2006, when Josefina divorced him. A.H. testified the last time she saw Baker was in the summer of 2006. In 2008, Josefina married Michael. Witnesses testified that Michael and Baker had grown up together and called each other brothers. In 2010, Michael adopted A.H. and her two sisters, including Baker's biological daughter. The same year, A.H. made her outcry.

Baker was indicted by a Bexar County grand jury in 2012, charged with three counts of aggravated assault of a child and one count of indecency with a child by contact, all alleged to have occurred in Bexar County in 2003. Baker requested and was appointed counsel to represent him.

At a pretrial hearing on the Friday before the Monday trial was scheduled to begin, Baker's appointed attorney advised the court that Baker wanted him removed as counsel and that Baker wished to represent himself. The trial judge admonished Baker about his rights, the charges against him, and the dangers and pitfalls of representing himself. He also questioned Baker to determine whether Baker understood his rights and the import of waiving his rights. Baker persisted in his desire to represent himself. The trial court allowed it and appointed standby counsel. The court advised the parties that jury selection would begin the following Monday and adjourned so that

Baker could review witness statements and discovery and prepare subpoenas. The court admonished Baker further the following Monday morning and the trial began. The jury found Baker guilty on all counts. Punishment was tried to the court, and the State introduced evidence that Baker had been previously convicted of an offense under section 22.011 of the Texas Penal Code. The trial court therefore imposed a life sentence on each count pursuant to section 12.42(c)(2) of the Penal Code.

Baker appeals, arguing the trial court erred by failing to conduct an inquiry into his competence to stand trial, he did not voluntarily and intelligently waive his right to counsel, and the trial court erred in finding Baker was competent to represent himself.

## COMPETENCE TO STAND TRIAL

Baker contends the trial court violated his rights by failing to conduct an informal inquiry into his competency. A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or does not have both a rational and factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2006); *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam).

A defendant is presumed to be competent to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(b). However, "[i]f evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(b) (West Supp. 2014). When there is a "suggestion" of incompetency to stand trial, the trial court must conduct an "informal inquiry" to determine whether evidence exists to justify a formal competency trial. *Id.* art. 46B.004(c); *Turner v. State*, 422 S.W.3d 676, 691-93 (Tex. Crim. App. 2013). This suggestion of incompetency "is the threshold requirement for an informal inquiry . . . and may

consist solely of a representation from any credible source that the defendant may be incompetent." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c–1). "A further evidentiary showing is not required to initiate the inquiry, and the court is not required to have a bona fide doubt about the competency of the defendant." *Id.*

We review the trial court's decision not to conduct an informal competency inquiry for abuse of discretion. *Jackson v. State*, 391 S.W.3d 139, 141 (Tex. Crim. App. 2012); *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009). The trial court's assessment of the defendant's ability to rationally and factually understand the proceedings and to assist counsel is "entitled to great deference" by the reviewing court. *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003). We do not substitute our judgment for that of the trial court; rather, we determine whether the trial court's decision was arbitrary or unreasonable. *See Montoya*, 291 S.W.3d at 426 (noting that trial court is "in a better position to determine whether [the defendant] was presently competent").

Baker argues that statements he made during the trial court's admonishments and his performance during the trial should have triggered an informal inquiry into his competence to stand trial. Baker first points to the pretrial hearing, when the judge was admonishing him about the dangers of self-representation and questioning him to ensure he understood his rights. The judge asked Baker whether he had any history of mental disorders, psychiatric treatment, or referrals to a psychiatric hospital. Baker responded that he "was in Rusk one time" because he had attempted suicide. Baker told the court he had not been found incompetent. Baker stated he had been in the hospital for about a month, then he appeared before a judge and was allowed to leave. The trial court concluded it had been a civil commitment. Throughout the pretrial hearing, Baker was reasonably articulate and communicated appropriately with the court. Nothing in the record suggested that Baker did not understand exactly what he was charged with. He also made

statements suggesting he fully understood that the State was seeking a mandatory life sentence on each charge. Baker did not display any inappropriate behavior and there was no suggestion that Baker had suffered any recent mental illness. The court asked Baker's appointed counsel, who was standby counsel during trial, whether he had any concerns about Baker's competency or competency to represent himself, and counsel responded that he did not have any such concerns.

The relevant time frame for determining competence is at the time of the proceedings. *Jackson*, 391 S.W.3d at 143. A person's history of depression or mental illness or a past suicide attempt does not suggest incompetence and trigger an informal inquiry unless there is a suggestion that it impacts the defendant's present ability to understand the proceedings and communicate with counsel. *See id.* (holding evidence of past emotional issues did not trigger informal inquiry); *Montoya*, 291 S.W.3d at 425 (stating "[w]e have held that instances of depression are not an indication of incompetency and that past mental-health issues raise the issue of incompetency only if there is evidence of recent severe mental illness, at least moderate retardation, or bizarre acts by the defendant"); *Hobbs v. State*, 359 S.W.3d 919, 925 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that "[n]either appellant's history of mental illness nor the fact that appellant may have been on psychiatric medication is sufficient to warrant a competency inquiry absent evidence of a present inability to communicate with his attorney or understand the proceedings"); *see also Townsend v. State*, 949 S.W.2d 24, 27 (Tex. App.—San Antonio 1997, no pet.) (concluding suicidal tendencies and depression did not raise bona fide doubt about defendant's competency). Here, there is no suggestion in the record, from Baker's statements or conduct or from any other source, that at the time of trial he suffered any current mental illness or depression or that his past commitment affected his abilities to understand the proceedings, consult with counsel, or conduct his defense.

Baker next argues that his incompetence was suggested by his defense strategy, which appellate counsel characterizes as a "delusional" conspiracy theory. He points to his opening statement, in which Baker asserted the charges were brought against him because another man wanted to adopt Baker's child. He also points to Baker's examination of the witnesses that appeared to focus on collateral issues and not on the charges against him.

The State's witnesses were the complainant, an apparently credible nineteen-year-old college student, and her mother, Josefina. From the record, it appears Baker's strategy was to discredit their testimony by showing them to have made inconsistent statements and to have faulty memory, and to provide evidence of a motive for them to have fabricated the charges. Baker was somewhat successful impeaching the witnesses on collateral matters and in establishing that their memory regarding certain details was incorrect. He also elicited testimony that the outcry was made during the time period that Josefina's new husband was trying to adopt Baker's biological child and testimony that the complainant did not want Baker to have custody of that child. This evidence furthered Baker's theory that the complainant and her mother fabricated the charges so that Baker would lose his parental rights and the other man could adopt his child.

It was not delusional for Baker to believe that the jury would find the complainant sympathetic and would be inclined to believe the State's witnesses. It was also not delusional for him to believe that he needed to challenge their credibility and to provide the jury with some explanation for why his ex-wife and stepdaughter would fabricate the charges. Although Baker's strategy was not successful, it was based in fact and was not delusional. *Guerrero v. State*, 271 S.W.3d 309, 316 (Tex. App.—San Antonio 2008) (holding that generally "unusual, misguided, and legally incorrect" approach to defense did not suggest incompetence where strategy showed "a logical, not a confused, thought process"), *aff'd in part and rev'd in part on other grounds*, 305 S.W.3d 546 (Tex. Crim. App. 2009).

Finally, we disagree with Baker's assertion that his conduct at the trial suggested legal incompetence. Although Baker spoke little during voir dire, the trial judge and the prosecutor conducted extensive voir dire. The record reflects that Baker understood when a prospective juror should be stricken for cause, he asked several appropriate clarifying questions, he was coherent, and his communication with the prospective jurors was effective. During the State's direct examination, Baker made appropriate evidentiary objections. During his cross-examination of the State's witnesses, Baker's questions were clear. When the witnesses refused to answer or became argumentative, Baker persisted or asked the trial court to instruct the witness. He effectively impeached the witnesses on several details. Baker did not engage in long rambling discourses and did not make any inappropriate outbursts or engage in bizarre or disruptive behavior. In short, there was no suggestion from any source during the trial that Baker did not have a rational and factual understanding of the proceedings against him or that he did not possess the present ability to consult with counsel with a reasonable degree of rational understanding or conduct his own defense. The trial court therefore did not abuse its discretion by failing to conduct an informal inquiry into Baker's competence to stand trial.

## WAIVER OF RIGHT TO COUNSEL

Baker next argues that his waiver of counsel was invalid. A criminal defendant has a right under the Sixth Amendment to the United States Constitution to prosecute his own legal defense. *Faretta v. California*, 422 U.S. 806, 818-32 (1975). However, before the trial court may allow a defendant to represent himself, the defendant must knowingly, intelligently, and voluntarily waive his constitutional right to counsel. *Id.* at 835; *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The decision to waive counsel and proceed pro se is made knowingly and intelligently if it is made with a full understanding of the right to counsel that is being abandoned, as well as

the dangers and disadvantages of self-representation. *Collier*, 959 S.W.2d at 626. "The decision is made 'voluntarily' if it is uncoerced." *Id.*

When a defendant unequivocally asserts his right to self-representation, the trial court must make him "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (citations omitted). "[T]he trial judge must inform the defendant 'that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his *pro se* rights.'" *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (quoting *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)). No formulaic questioning or particular script is required in order for a trial court to assure itself that an accused who has asserted his right to self-representation does so with eyes open. *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). The trial judge may question the defendant about matters such as age, education, background, or previous mental history, but has no duty to do so. *Williams*, 252 S.W.3d at 356. In assessing whether the waiver was effective, we consider the totality of the circumstances. *Id.*

Baker asserted his desire to represent himself at a hearing on the Friday before trial was scheduled to begin. The trial judge "heartily" discouraged Baker from representing himself and told Baker he thought it would be a mistake. He then asked Baker a series of questions to determine whether his waiver of counsel was made knowingly and intelligently. The judge asked Baker his age and about his education and work experience. Baker said he was sixty-two years old, had attended some college, but not received a degree, and that he worked as a project engineer, managing large construction projects. Baker told the court he had participated in a criminal case before as a defendant, but had not represented himself or gone through a trial. Baker told the court he had once been committed to Rusk State Hospital after attempting suicide, but there had not been

a finding that he was incompetent and he was released after a month. Baker stated he had no physical issues that would prevent him from participating in the trial. He understood that he was constitutionally entitled to representation by an appointed attorney. The trial judge made sure that Baker understood what the charges against him were and the potential punishment in the event the jury found him guilty. Baker expressed his understanding of the charges and that the State was seeking a mandatory life sentence based on the enhancement allegation.

The judge told Baker they would begin selecting a jury early on Monday morning. Baker asked whether he would have more access to the law library in the county jail, and the judge responded that library access was controlled by the sheriff, not the court, and that Baker would need to determine for himself how to make a request for more library time to the sheriff. Baker also asked if he would be allowed to subpoena witnesses. The judge responded affirmatively, but told Baker he would need to know how to do so correctly.

The trial court admonished Baker that, "[D]uring the trial I'm going to have to treat you just like I would a lawyer so you're not going to receive any special favors." Baker responded, "I understand." The judge further admonished:

> [Y]ou're going to have to comply with all the rules of procedure and all the rules of evidence. You'll have to be knowledgeable as to the substantive law and engage in and follow all the rules of decorum that a lawyer would have to if they were here. So you're aware of all that?
>
> . . .
>
> Anybody who represents themselves are losing the right to counsel, including you may lose whatever defense you have by not knowing how to preserve it or raise it. You may waive any defect in the indictment or the charging instrument. You might waive any error in the admission or exclusion of evidence by not knowing how to preserve it. You might be convicted on incompetent, irrelevant or inadmissible evidence by not knowing how to object. You could be convicted, though innocent, simply because you don't know to raise and establish your defense. You will lose appellate issues on -- on appeal, specifically the ineffective assistance of counsel. You're, in fact, giving up any right to effective assistance of counsel by representing yourself in the sense that it is necessary to have a lawyer to ensure

> effective assistance. By doing what you're doing, you're waiving your right to effective assistance of counsel. You may not know how to object to the Charge of the Court and you may get a legally incorrect charge. And you may not know how to object to the prosecutor's arguments if they get out of hand. And you may end up having issues with the selection of a fair and impartial jury by not being a lawyer and not knowing how to select the jury appropriately.
> Knowing all that you still wish to waive your right to a lawyer and represent yourself?

Baker responded, "Yes, sir." The judge gave Baker an opportunity to ask any questions about the charges or the rights he was waiving. He then asked Baker if he was persisting in his desire to waive his rights and represent himself, to which Baker responded, "Correct."

Baker does not challenge sufficiency of the trial court's admonishments. Rather, he argues his waiver was invalid because it is "obvious" that "Baker did not know what he was doing when he waived counsel." To support this assertion, Baker first points to his discomfort in not having more time to prepare and his lack of knowledge of trial procedures, and what appellate counsel calls a flawed trial strategy. However, whether a defendant has a technical understanding of trial procedure and available defenses is not relevant to an assessment of whether he knowingly waived his right to counsel. *Faretta*, 422 U.S. at 835; *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. [Panel Op.] 1980); *Fletcher v. State*, 474 S.W.3d 389, 397-98 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Baker also suggests that his disclosure that he had once been committed because of an attempted suicide precluded the trial court from finding he knowingly and intelligently waived counsel. We disagree. Baker told the court that there had not been a finding of incompetence and the record does not contain any suggestion that Baker had any recent mental illness. There is also nothing in the record suggesting that Baker was unable to or did not fully understand and appreciate the right he was waiving and the consequences of the waiver. Baker was responsive to questions posed by the court, communicated effectively with the judge, and repeatedly stated that he understood. Finally, as we explained above, Baker's trial strategy may

have been ineffective, but it was not "delusional," as contended by appellate counsel, and nothing about it calls into question the validity of Baker's waiver of his right to counsel.

We hold that, under the totality of the circumstances, the record supports the trial court's conclusion that Baker had sufficient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he would confront in representing himself. The record thus supports the trial court's determination that Baker's waiver was constitutionally effective.

### BAKER'S COMPETENCE TO REPRESENT HIMSELF

Baker contends that, even if he was competent to stand trial and validly waived his right to counsel, the trial court was required to hold a hearing on his competency to represent himself. He argues the trial court erred by not doing so and by impliedly finding that Baker was competent to represent himself.

Baker's argument is based on the United States Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164 (2008). In that case, the trial court twice found Edwards incompetent to stand trial due to mental illness and committed him to a hospital for evaluation and treatment. *Edwards*, 554 U.S. at 167-68. Subsequently, the trial court determined Edwards was competent to stand trial under the *Dusky* standard. *Id.* at 168-69. Edwards requested to represent himself. *Id.* The trial court denied the request, finding that Edwards still suffered from schizophrenia and that, although he was competent to stand trial, he was not competent to defend himself. *Id.* at 169.

The Supreme Court reaffirmed that the Sixth and Fourteenth Amendments include a "constitutional right to proceed *without* counsel when" a defendant "voluntarily and intelligently elects to do so." 554 U.S. at 170 (quoting *Faretta*, 422 U.S. at 807) (emphasis in original). However, the Court also acknowledged that the right is not absolute and held that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial

under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 177-78. The Court emphasized that the trial judge is often best able to make decisions about a defendant's mental capacity beyond those required by *Dusky*, "tailored to the individualized circumstances of a particular defendant." *Id.* at 177. The court expressly refused to adopt a specific standard. *Id.* at 178.

The Texas Court of Criminal Appeals applied *Edwards* in *Chadwick v. State*, 309 S.W.3d 558 (Tex. Crim. App. 2010). Chadwick had been found incompetent to stand trial and committed to a state hospital. 309 S.W.3d at 560. When he was brought before the trial court after his competency was restored, Chadwick asserted his right to represent himself. *Id.* The trial court denied Chadwick's request. *Id.* On appeal, Chadwick argued the trial court violated his constitutional right to self-representation. Because the trial court had limited Chadwick's right of self-representation, the court concluded it had impliedly found that, although Chadwick was competent to stand trial, his "mental illness was severe enough to render him incompetent to proceed *pro* se." *Id.* at 562. The court held this finding is properly reviewed under the bifurcated abuse of discretion standard. *Id.* at 561. The court then concluded that the record supported the trial court's implied findings that Chadwick's mental illness was severe enough to render him incompetent to represent himself. *Id.* at 562.

The Supreme Court's decision in *Edwards* decided only that it is *permissible* for the State to *limit* the constitutional right to self-representation of severely mentally ill defendants under certain circumstances. And, as in *Chadwick*, the trial court must make appropriate findings before it can deny or limit a competent defendant's right to represent himself. However, neither *Edwards* nor *Chadwick* expressly or impliedly impose a requirement of further inquiry on the trial court where nothing in the record suggests the defendant is suffering from severe mental illness. We therefore reject Baker's argument that when a competent-to-stand-trial defendant validly waives

his right to counsel, the trial court is required to hold an additional hearing to determine if the defendant is competent to represent himself. *See Fletcher v. State*, 474 S.W.3d 389, 401 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding that when defendant was competent to stand trial and had waived right to counsel, "the trial court was not constitutionally required to conduct a further inquiry regarding appellant's competence to conduct his own defense"). When nothing in the record suggests a defendant has severe mental illness or other debilitating condition, the trial court does not err by allowing a competent defendant who has voluntarily, knowingly, and intelligently waived his right to counsel to represent himself without conducting any further inquiry. As we hold above, there is nothing in the record to suggest that Baker was not competent to stand trial, and his waiver of his right to counsel was competent, voluntary, and intelligent. There is no suggestion in the record that Baker was mentally ill or that he was incompetent to represent himself. Accordingly, the trial court did not abuse its discretion by failing to conduct a further inquiry and did not violate Baker's rights by allowing him to represent himself.

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

Do not publish