

# NUMBER 13-20-00144-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ISSAC-JOHN COLLINS,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## On appeal from the 117th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

Appellant Issac-John Collins was convicted of: (1) one count of aggravated kidnapping, a first-degree felony; (2) sixty-six counts of sexual assault of a child, a second-degree felony; (3) one count of attempt to commit aggravated sexual assault of a child, a first-degree felony; (4) one count of indecency with a child, a third-degree felony; and (5) one count of unlawful restraint of a child, a state jail felony. *See* TEX. PENAL CODE

ANN. §§ 20.02(c)(1), 20.04(A)(1)(1–6), 21.11(d), 22.011(a)(2), 22.021(a)(2)(B). Collins was sentenced to a total of seventy years in prison.

In two issues, Collins appeals his conviction on the grounds that: (1) the trial court should have not allowed him to waive his right to counsel, and (2) his sentence is grossly disproportionate to the seriousness of the alleged offenses. We affirm.

## I. BACKGROUND

Collins was arrested on February 7, 2019 for the above-described charges. At his arraignment hearing on April 22, 2019, Collins appeared with private counsel. The trial court listed the charges Collins faced and confirmed with Collins that he had received and reviewed a copy of the indictment. Collins's first attorney withdrew from the case on May 24, 2019, and a competency evaluation was ordered that same day. On June 5, 2019, Collins filed an affidavit of indigence and counsel was appointed to represent him. The results of the competency evaluation were received by the court on September 10, 2019, but were not included in the record on appeal.

On October 16, 2019, Collins filed a pro se, handwritten letter addressed to the court in which he requested to represent himself. The letter stated, in part,

> I have a court appointed [attorney] and getting her to do stuff on behalf of my defense is almost impossible. Iv [sic] spoken with her and she has no objection concerning me executing my legal rights in representing myself. I represented myself in my last felony case in [P]ecos [C]ounty in 2018. . . . I walked out with no time. At age 19[,] I took a disorderly conduct charge to trial in [S]mith [C]ounty, picked out my jury and cross examined my accusers and I hung the jury. I do know how to handel [sic] myself in court.

In the letter, Collins also objected to continuing his trial date, requested a pretrial hearing, moved for the suppression of certain evidence, and asked that his appointed counsel

2

relinquish to Collins the discovery in her possession.

On October 18, 2019, the trial court held a *Faretta* hearing. *See Faretta v. California*, 422 U.S. 806, 833–36 (1975). The following exchange took place between the court and Collins:

| THE COURT: | And I received the letter that you want to represent yourself. Before I can allow that to happen, I have to, in effect, counsel you that that is not a good idea. |
|---|---|
| [COLLINS]: | I understand, Your Honor. |
| THE COURT: | In fact, there is an old saying that someone who represent[s] themselves has a fool for a client, okay? And the bottom line is you have not gone to law school. |
| [COLLINS]: | Right. |
| THE COURT: | It is—I have to hold you to the same Rules of Procedure and the same Rules of Evidence. It's just that you don't get to just talk. So when you want to represent yourself, it is like you can handle the case and I can't give you any leeway or make it easier for you, and I certainly can't be your attorney. |
| [COLLINS]: | I understand, Your Honor. |
| . . . . | |
| THE COURT: | Now, you have the right to represent yourself, after I had admonished you that it is not a good idea. I do not recommend it at all because, again, in my opinion you'll be at a disadvantage because you are not trained as a lawyer to know the Rules of Evidence and the Rules of Procedure. |
| [COLLINS]: | I understand, Your Honor. |
| THE COURT: | Okay? So I need to know, after I have admonished you, what is your decision? |

3

[COLLINS]: Your Honor, my decision to proceed as what it is. But I was requesting, what's it called? Because of the nature of this case, these cases are considered biased, a lot of people are biassed [sic] and pre-judge these cases and—

THE COURT: You're considering what?

[COLLINS]: These cases are like—these cases can easily be biased on the, like they pre-judge these cases, looking at the evidence and stuff.

THE COURT: Uh-huh.

[COLLINS]: And even—you've been a judge for decades, and you handle these cases and—

. . . .

[COLLINS]: —and you've been my judge most of my life.[1]

THE COURT: Uh-huh.

[COLLINS]: And I'm requesting that you hear my case, so it will be like—more like requesting a bench trial.

THE COURT: You are requesting a bench trial?

[COLLINS]: I won't get a fair trial with a jury, like these cases are easily pre-judged I've seen it can be done.

. . . .

THE COURT: And you haven't answered my question. Do you want [appointed counsel] to be, in effect, the attorney that represents [you] during the case, the bench trial, or are you going to insist on representing yourself?

---

[1] The record indicates that the presiding judge in the underlying case was also the presiding judge for the following: (1) Collins's guilty pleas to theft and failure to identify entered on April 22, 2011, *see* TEX. PENAL CODE ANN. §§ 31.03, 38.02, and (2) a hearing to revoke Collins's community supervision on March 7, 2012. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.754. The record also indicates the presiding judge in the underlying case signed off on a judgment of conviction on November 18, 2014, for a count of theft committed by Collins. *See* TEX. PENAL CODE ANN. § 31.03.

[COLLINS]:          I will insist on representing myself.

The court granted Collins's request to represent himself and his request for a bench trial, and his appointed counsel was ordered to serve as standby counsel throughout the remainder of the proceedings. *See Scarbrough v. State*, 777 S.W.2d 83, 92–93 (Tex. Crim. App. 1989) (holding that although a defendant does not have an absolute right to hybrid representation, a trial court may permit it in its discretion).

On November 7, 2019, the trial court held a status conference during which it revisited its ruling on Collins's waiver of his right to counsel based on reports from the jail concerning Collins's mental health. According to Edra Bocanegra, the mental health coordinator and licensed professional counselor employed at the jail, Collins had been placed on suicide watch several times following the October 18 hearing. Bocanegra testified that Collins would ask to be removed from his unit based on his fears of the other inmates. When Collins's request to be removed was denied, he would then report having suicidal ideations. Bocanegra stated that "[Collins] didn't need to be on suicide watch because of the risk factors. He has no history of suicide attempts, no history of mental health [issues], and so we would take him off suicide watch."

The following colloquy then took place between the court, Collins, and standby counsel:

THE COURT:          Okay. Let me explain to you. I—I think you're being well taken care of in the jail. Hold on. My concern is . . . whether you can represent yourself in a serious case.

[COLLINS]:          Oh, I can represent myself. . . .
                    I don't have no mental illnesses. I don't have no–

5

|   |   |
|---|---|
| | I don't have no suicidal behaviors. I only come down because people in there start messing with me because of my case . . . . |
| THE COURT: | Again, you're not listening to what I have to say and that is I understand what has been happening in the jail. |
| [COLLINS]: | Yeah. |
| THE COURT: | The reason is I heard about what's been happening in the jail and it began to concern me with regards to the decision that I have to make and that is whether or not you are capable of in effect representing yourself after you have expressed the desire to represent yourself and after I have admonished you about the negative aspects of representing yourself. |
| [COLLINS]: | I'm pretty confident in my representation of myself. I think a medical examiner—a medical by—a doctor examined me and said I was good. I was seen to be fit. |
| THE COURT: | Okay. [Standby counsel], he's your client and I've appointed you as of October to in effect to assist him with regards to his self-representation. Have you had any meetings with him that would shed some light on to whether or not I need to conduct another hearing and make a determination as to whether I should allow him to represent himself even though it is his desire? |
| [STANDBY COUNSEL]: | Judge, I feel like—even if he had a court-appointed lawyer representing him he would be—he would be running the show. He is determined to represent himself. I will tell the Court he's come up with some things that I think are good decisions— |
| THE COURT: | Okay. |
| [STANDBY COUNSEL]: | —and so I—I don't think there is going to be any |

6

|  |  |
|---|---|
|  | lawyer who can represent him. He—he is determined to represent himself and I think he would agree with that. |
| [COLLINS]: | I do want to say I thank this Court, you know, for giving me the opportunity to, you know, be able to represent myself. I'm sorry that I have a housing issue that— |
| THE COURT: | Okay. |
| [COLLINS]: | —I'm not able to control and it's in the way— |
| THE COURT: | He—he definitely sounds like he's got a grasp of the circumstances involved. Okay. So I was just concerned as to what I heard was happening in the jail and I needed to revisit my ruling on October 18th. So my ruling on October 18th based upon what I've heard in this courtroom, your—your statement and [standby counsel]'s statement, that ruling will stand . . . . |

On March 2, 2020, Collins's trial began. Prior to opening statements, the court found that:

[E]arly, early on, this Court entertained and sent Mr. Collins for a competency evaluation where he was determined, without a question, to be competent, and that Mr. Collins has indicated to the Court and requested from the Court, on a number of occasions, that he be allowed to represent himself. This Court did conduct a competency [evaluation] as to whether he could or he could not represent himself. . . . I made the determination after I admonished him and argued against him representing himself that he could represent himself, and he has been doing that ever since.

At the conclusion of trial, the judge found Collins guilty beyond a reasonable doubt of all seventy counts and sentenced him to a total of seventy years in prison. This appeal followed.

## II.    WAIVER OF RIGHT TO COUNSEL

In his first issue, Collins contends that his decision to waive his right to counsel was not made competently nor was it made knowingly and intelligently.

### A.    Standard of Review & Applicable Law

The Sixth and Fourteenth Amendments guarantee the right of an accused in a criminal proceeding to effective assistance of counsel. *See Gideon v. Wainright*, 372 U.S. 335, 342–44 (1963); U.S. CONST. amends. VI, XIV. The right to effective assistance of counsel may be waived by a defendant who wishes to conduct his own defense. *Faretta*, 442 U.S. at 836. "To be constitutionally effective, the waiver of counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily." *Fletcher v. State*, 474 S.W.3d 389, 395 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997)).

### B.    Analysis

#### 1.    Collins's Waiver Was Made Competently

The competency that is required of a defendant seeking to waive his right to counsel is the competency to waive the right, not the competency to represent himself. *Godinez v. Moran*, 509 U.S. 389, 399 (1993). Thus, the standard for waiving the right to counsel, generally, is no higher than the standard for competency to stand trial. *Chadwick v. State*, 309 S.W.3d 558, 560 (Tex. Crim. App. 2010) (citing *Godinez*, 509 U.S. at 399). A defendant is presumed competent to stand trial unless a preponderance of the evidence proves otherwise. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b).

However, a trial court is permitted to insist upon counsel for a defendant who is competent to stand trial, but who nonetheless suffers from severe mental illness. *Indiana v. Edwards*, 554 U.S. 164, 174 (2008). "[O]nce a defendant is deemed competent to stand trial, the relevant inquiry in determining whether a court may insist on counsel is whether the defendant can 'carry out the basic tasks needed to present his own defense without the help of counsel.'" *Fletcher*, 474 S.W.3d at 389 (quoting *Edwards*, 554 U.S. at 175–76). The court is authorized to take a realistic account of the defendant's mental capacities in determining whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. *Edwards*, 554 U.S. at 177–78. The trial court is in a far superior position than the reviewing court to assess the competency of a defendant to proceed pro se. *Id.* at 177. A trial court's determination that a defendant is competent to waive his right to counsel is therefore reviewed for an abuse of discretion. *Chadwick*, 309 S.W.3d at 561. We review the evidence in the light most favorable to the trial court's ruling. *Id.*

Here, the trial court found that, after his competency evaluation, Collins "was determined, without a question, to be competent." Neither party objected to this finding. In support of his assertion that his waiver was not competently made, Collins included an excerpt from his trial transcript where he cross-examined a witness in a manner that he asserts on appeal was "incompetent, damaging, and hostile." But Collins's waiver of counsel was entered over four months prior to the questioning of this witness. The trial court did not have the benefit of hindsight at the time it accepted Collins's waiver of counsel. *See Geeslin v. State*, 600 S.W.2d 309, 314 (Tex. Crim. App. 1980).

9

Nevertheless, Collins argues it was the trial court's duty to sua sponte declare a mistrial and appoint counsel once it observed Collins's performance at trial.

The record demonstrates that Collins asked many cogent questions during his cross-examination of this particular witness. Other portions of the record from both his trial and the preliminary proceedings indicate that he was, for the most part, respectful to the trial court, the prosecutor, his standby counsel, and most of the witnesses. He filed several motions, provided a coherent opening statement, was able to admit items of evidence, and lodged many objections that were sustained. Therefore, the record affirmatively demonstrates that Collins was able to "carry out the basic tasks needed to present his own defense without the help of counsel." *See Edwards*, 554 U.S. at 175–76; *Chadwick*, 309 S.W.3d at 563.

Further, the record does not indicate Collins suffers from any severe mental illness, which is the "threshold requirement for mandating that a defendant accept the representation of counsel." *See Fletcher*, 474 S.W.3d at 401.

We therefore conclude the trial court's finding that Collins's waiver was competently made was not an abuse of discretion.

### 2. Collins's Waiver Was Made Knowingly And Intelligently

Because a defendant who conducts his own defense "relinquishes . . . many of the traditional benefits associated with the right to counsel," he must knowingly and intelligently choose to forgo those benefits in order to represent himself. *Faretta*, 422 U.S. at 835. A waiver is made knowingly and intelligently if the accused is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that

10

'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)). The trial court must admonish the defendant about the dangers and disadvantages of self-representation, that there are technical rules of evidence and procedure, and that the defendant will not be granted special consideration solely based on his decision to proceed pro se. *Johnson*, 760 S.W.2d at 279.

There is no formulaic line of questioning or script a trial court must follow in evaluating whether a defendant appreciates the decision he is making. *Id.* at 278. If such factors are not apparent from the record, a trial court's inquiry regarding a defendant's waiver of counsel should center around his "'age, education, background, or previous mental health history.'" *Id.* (quoting *Martin v. State*, 630 S.W.2d 952 (Tex. Crim. App. 1982)). In assessing whether a waiver was made knowingly and intelligently, courts look to "the totality of circumstances." *Williams v. State*, 252 S.W.3d 353, 357 (Tex. Crim. App. 2008). Whether the totality of circumstances evinces an effective waiver will depend on "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Collins argues that, although the trial court admonished him at length on the perils of representing himself, the waiver of his right to counsel was not knowingly and intelligently made because the trial court did not conduct an in-depth inquiry into Collins's "age, experience with the legal system, knowledge of the rules of evidence and procedure for the State of Texas, or his overall maturity to conduct his own defense." *See Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988). The record indicates Collins was

11

thirty-two years old on the day of the *Faretta* hearing. Collins's handwritten letter filed on October 16, 2019, demonstrates that he (1) is literate; (2) has experience successfully representing himself in at least two prior criminal cases; and (3) has a marked understanding of criminal procedure. The trial judge also had some personal familiarity with Collins's experience with the legal system, as she had accepted pleas from him for various offenses on at least three occasions prior to the underlying case. The court conducted an inquiry into Collins's mental health when it appointed an expert to investigate his competency to stand trial.

During the *Faretta* hearing, the trial court recommended against Collins's self-representation "because [he was] not trained as a lawyer to know the Rules of Evidence and the Rules of Procedure." *See Johnson*, 760 S.W.2d at 279 (requiring that defendant be made aware "that there are technical rules of evidence and procedure"). The trial court also admonished Collins that he would not be granted any leeway and would be held to the same standard as an attorney. *See id.* (requiring that defendant be made aware "he will not be granted any special consideration solely because he asserted his pro se rights"). While it is true that the trial court did not determine Collins's level of familiarity with the Rules of Evidence and Procedure, "technical legal knowledge . . . [is] not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself." *See Faretta*, 422 U.S. at 836; *see also Blankenship v. State*, 673 S.W.2d 578, 584 (Tex. Crim. App. 1984) (holding that appellant's failure of "trial court's impromptu evidentiary and procedural 'pop quiz'" was an improper ground for denial of appellant's right to self-representation). In addition to admonishing Collins, the trial court ordered defense

12

counsel to remain as standby counsel.

The court also revisited the decision to accept Collins's waiver of counsel, as it was permitted to do, when concerns about Collins's mental health arose. *See Edwards*, 554 U.S. at 177–78. At that hearing, the trial court impressed upon Collins the seriousness of the charges he was facing. It also heard from standby counsel that Collins had come up with some good legal decisions and that he was determined to represent himself. It heard from both the mental health coordinator at the jail and from Collins that he was not suffering from severe mental health issues.

The record before us is bereft of any inquiry into Collins's level of education. A careful trial court should inquire into a defendant's age, background, education, experience, and any other necessary information prior to permitting the wavier of counsel. *See Williams v. State*, 774 S.W.2d 703, 705 (Tex. App.—Dallas 1989, pet ref'd). "But a trial judge has no duty to inquire into an accused's age, education, background[,] or previous mental health history in every instance where an accused expresses a desire to represent himself." *Williams*, 252 S.W.3d at 356 (quotation omitted). Because the record affirmatively shows that Collins was "literate, competent, and understanding, and that he was voluntarily exercising his informed free will," we conclude the trial court did not err in implicitly finding that Collins's waiver of the right to counsel was made knowingly and intelligently. *See Faretta*, 422 U.S. at 835–36.

We overrule Collins's first issue.

### III. DISPROPORTIONATE SENTENCE

In his second issue, Collins contends that the punishment assessed by the trial

court was disproportionate to the seriousness of the alleged offenses in violation of the Eighth and Fourteenth Amendments of the United States Constitution. *See* U.S. CONST. amends. VIII, XIV. The State contends Collins has failed to preserve the issue for review.

The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines, nor cruel and unusual punishment inflicted." *Id.* amend VIII. The Eighth Amendment's protections are extended to punishments imposed by state courts through the Due Process Clause of the Fourteenth Amendment. *Id.* amend. XIV. To preserve for appellate review a complaint that the sentence imposed is grossly disproportionate, a defendant must present to the trial court a timely request, objection or motion stating the specific grounds for the ruling sought. TEX. R. APP. P. 33.1(a); *Mercado v. State,* 718 S.W.2d 291, 296 (Tex. Crim. App. 1986) ("As a general rule, an appellant may not assert error pertaining to his sentence or punishment where he failed to object or otherwise raise such error in the trial court."). "A defendant is required to 'present' a motion to the trial court within ten days of filing it, unless the court, in its discretion, extends that time period." *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 21.6). "Merely filing the motion is not sufficient alone to show presentment." *Id.* The defendant must give actual notice to the trial court of the timely filed motion for new trial and actual notice of the desire to have a hearing. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005).

Collins's sentence was imposed on March 9, 2020. After the punishment phase of his trial, Collins did not object to the length of his sentence. Collins was appointed counsel on March 10, 2020. In an inmate communication form filed with the court on March 12,

2020, Collins wrote, "IV [sic] been given a[n] [e]xtraordinar[ily] cruel and unusual punishment." Collins also attached a motion for sentence reconsideration to the inmate communication form. Neither the inmate communication form nor the motion for sentence reconsideration requested a hearing on the motion for sentence reconsideration. *See id.* The record does not indicate that the trial court ever ruled on the motion. Moreover, the trial court was not required to consider this motion, as Collins was represented by counsel at the time it was filed. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) ("[A] trial court is free to disregard any pro se motions presented by a defendant who is represented by counsel."); *Hazelwood v. State*, 838 S.W.2d 647, 649 (Tex. App.— Corpus Christi–Edinburg 1992, no pet.). A trial court's decision not to rule on a pro se motion in this context is not subject to review. *See Robinson*, 240 S.W.3d at 922. The issue of disproportionate sentencing was not raised in the motion for new trial that counsel for Collins filed on March 27, 2020. *See id.* at 921.

We conclude that Collins's complaint that his sentence was grossly disproportionate has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Trevino v. State*, 174 S.W.3d 925, 927–28 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd). Moreover, even if this argument had been properly raised below, a comparison of "the gravity of the offense [to] the severity of the sentence" in this case does not lead to a threshold inference of gross disproportionality considering the evidence presented as to the offenses. *See Graham v. Florida*, 560 U.S. 48, 60 (2010); *Trevino*, 174 S.W.3d at 927–28.

We overrule Collins's second issue.

15

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
10th day of February, 2022.