**Affirmed and Memorandum Opinion and Memorandum Concurring Opinion
filed December 12, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00052-CR

---

**WYATT ELLIS BUSBY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1535843**

---

### MEMORANDUM OPINION

Appellant challenges his conviction for murder, arguing in several issues that his waiver of the right to counsel was not competent, intelligent, or voluntary; that the trial court abused its discretion with regard to certain evidentiary rulings; and that the trial court improperly limited the scope of closing arguments. For the reasons given below, we overrule all of the issues presented and affirm the trial court's judgment.

# I.    BACKGROUND

Appellant was charged in the stabbing death of the complainant, who was his mother's former paramour. Appellant admitted to killing the complainant, but he claimed that he had acted in justifiable self-defense, which was the primary focus of his trial.

The prosecution produced evidence that appellant had no need for his use of deadly force. The prosecution relied in part on appellant's cousin, an eyewitness to the stabbing, who testified that the complainant had done nothing to provoke appellant or to cause him to use deadly force. According to the cousin, the complainant had returned from dialysis treatment to a home that he shared with appellant and appellant's mother. As the complainant was preparing a meal, appellant asked if a check had been delivered in the mail. The complainant responded that a check had been delivered to himself (i.e., to the complainant), but that no check had arrived yet for appellant. At that point, appellant grabbed a knife and began to stab the complainant in the chest, shoulder, and stomach. The complainant fell to the ground, and then appellant fatally sliced through the complainant's neck.

Testifying in his own defense, appellant established that he had a long and complicated history with the complainant. Appellant explained that the complainant began dating his mother when appellant was very young, around six or seven years old. During their dating relationship, the complainant would physically abuse appellant's mother and create such an unstable environment that appellant and his siblings were removed from the home and temporarily placed into foster care. Appellant also said that the complainant sexually abused him for many years in his sleep.

Several years before the lethal stabbing involved in this case, appellant non-lethally stabbed the complainant because the complainant allegedly touched appellant in his sleep. Appellant was charged in that non-lethal stabbing and ultimately sent to prison.

Following his release, appellant returned to his mother's home, where the complainant also resided. Later, at a holiday party, appellant said that he heard that the complainant had wanted to kill him. A few days after the party—and on the same day of the lethal stabbing—appellant said that his mother repeated that same statement. Appellant testified that he acted on his fear that the complainant would try to kill him because in the moments leading up to the stabbing, the complainant had "smiled" at him, which appellant construed as a threat.

The jury disbelieved appellant's claim of self-defense, convicted him as charged, and assessed his punishment at fifty years' imprisonment.

## II.    WAIVER OF RIGHT TO COUNSEL

On the morning of voir dire, appellant requested to represent himself. The trial court granted that request, after first warning appellant of the dangers and disadvantages of self-representation. Appellant then represented himself through voir dire and through the cross-examination of several witnesses on the first day of trial. But near the end of that first day, appellant requested his standby counsel to resume the lead. The trial court granted that request, and counsel remained on the case through its conclusion.

Appellant now raises two issues regarding the trial court's initial decision to grant his request for self-representation. First, appellant argues that he lacked the competence to waive his right to counsel. And second, he argues that even if he had

3

been competent to waive his right to counsel, his waiver was neither intelligent nor voluntary. We examine each of these issues in turn.

## A. Competent

The competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself. *See Godinez v. Moran*, 509 U.S. 389, 399 (1993). This standard is no higher than the standard for competence to stand trial. *Id.* at 398. And a defendant is competent to stand trial when he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and he has a rational as well as factual understanding of the proceedings against him. *Id.* at 396.

The trial court is in the best position to make the decision whether a defendant is competent to waive his right to counsel. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). Because that decision is a mixed question of law and fact that turns on an evaluation of credibility and demeanor, we review the trial court's decision to allow or disallow self-representation for an abuse of discretion. *Id.* Under this standard, we consider all of the evidence in the light most favorable to the trial court's ruling. *Id.* And when, as here, there are no explicit findings of fact, we imply any findings necessary to support that ruling if such findings are supported by the evidence. *Id.*

In this case, the trial court remarked that appellant had been deemed competent to stand trial by a psychologist. The trial court also engaged in a conversation with appellant, and appellant's answers were generally responsive to the trial court's questions. Appellant further acknowledged that he was aware of the charges against him. Based on this evidence, we cannot say that the trial court abused its discretion when it implicitly found that appellant was competent to waive his right to counsel. *See Fletcher v. State*, 474 S.W.3d 389, 397 (Tex. App.—Houston

4

[14th Dist.] 2015, pet. ref'd) (upholding a trial court's decision to allow self-representation when the defendant had been deemed competent to stand trial and when the defendant's answers were responsive to the trial court's questions).

Appellant argues that we should reach the opposite conclusion under the doctrine known as the law of the case. That doctrine provides that "an appellate court's resolution of questions of law in a previous appeal are binding in subsequent appeals concerning the same issue." *See State v. Swearingen*, 478 S.W.3d 716, 720 (Tex. Crim. App. 2015). Appellant does not assert that there was a previous appeal in this case. Instead, he emphasizes that two judges presided over his case—one entirely in the pretrial stage, before she recused herself, and the other during the trial stage—and the first judge twice determined that appellant had been incompetent to stand trial. Appellant suggests from these earlier rulings that the second judge should have deferred to the first judge when deciding whether appellant was competent to waive his right to counsel. We disagree. The second judge here was not bound by "an appellate court's resolution of questions of law in a previous appeal." *Id*. There was no such appeal, and the law of the case doctrine did not preclude the second judge from revisiting an issue decided by his predecessor. In fact, our law specifically contemplates that competency can be restored. *See, e.g.*, Tex. Code Crim. Proc. art. 46B.071 (providing that if a defendant is found to be incompetent to stand trial, then the trial court may commit the defendant to a jail-based competency restoration program). Appellant's suggestions to the contrary lack merit.

Appellant makes several references in his brief to *Indiana v. Edwards*, 554 U.S. 164 (2008), which held that even when a defendant is competent to stand trial, a trial court may nonetheless insist that the defendant be represented by counsel if the defendant is suffering from a severe mental illness and is unable to conduct trial proceedings by himself. *Id.* at 178. *Edwards* has no direct application to this case

because the trial court here never insisted, over appellant's objection, that he be represented by counsel. Quite the opposite, the trial court granted appellant's request for self-representation.

Appellant nevertheless focuses on the part of *Edwards* in which the Supreme Court concluded that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Id.* at 177–78. Appellant then suggests that he was deprived of a fair trial because the trial court here never took his mental illness into account or considered his inability to conduct his own defense.

Appellant seems to believe that *Edwards* a requires a trial court to insist on representation for defendants who are incapable of conducting trial proceedings due to severe mental illness, but the language in *Edwards* is permissive, not obligatory. As this court subsequently held in an opinion analyzing *Edwards*, "the trial court [is] not constitutionally required to conduct a further inquiry regarding [a defendant's] competence to conduct his own defense once [a psychologist has] found [the defendant] competent to stand trial." *See Fletcher*, 474 S.W.3d at 401.

But even if such an inquiry were required, the trial court had the discretion on this record to conclude that appellant was competent to conduct trial proceedings by himself. Appellant advised the trial court that, even though he had no formal legal training, he had still "studied" for the trial. Appellant understood that he had the right to cross-examine witnesses, and that he could lodge evidentiary objections, including objections based on hearsay. Appellant also understood that the prosecution had the burden of proof, which meant that he had the right to "keep quiet." All of this evidence supports the trial court's implied finding that appellant was competent to carry out the basic tasks needed to present his own defense without

6

the help of counsel. *Id.* (similarly concluding that the record supported the trial court's ruling that the defendant was competent to conduct his own defense).

Appellant counters that the trial court abused its discretion because the record showed that he suffered from paranoid schizophrenia. But the only record citations that appellant has supplied in support of this argument are from the hearing on punishment. No such evidence was presented to the trial court at the time that it granted appellant's request for self-representation. And even if such evidence had been presented, our standard of review would require that we credit the competing evidence in support of the trial court's implied finding that appellant was capable of conducting a defense by himself. *See Chadwick*, 309 S.W.3d at 561.

## B. Intelligent and Voluntary

A waiver of the right to counsel is intelligent if the defendant is made aware of the dangers and disadvantages of self-representation. *See Faretta v. California*, 422 U.S. 806, 835 (1975). And a waiver is voluntary if it is uncoerced. *See Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997).

When deciding whether a defendant's waiver is effective under these standards, a trial court should consider the totality of the circumstances, including the defendant's background, age, experience, and education. *See Cudjo v. State*, 345 S.W.3d 177, 184 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

The trial court here inquired into all of these circumstances. The trial court learned that appellant was thirty-seven years old, that he had a sixth-grade education, and that he knew how to read. Appellant said that he had a job when he was sixteen years old, but that he has otherwise been in and out of jail. He did not disclose any history of mental health issues, or that he was currently suffering from any such issues.

7

The trial court admonished appellant that the case would be tried under the proper rules of evidence and procedure, and that appellant would not receive any special considerations or advantages because he was acting pro se. Instead, the trial court advised appellant that he would be treated as though he were an attorney with a full understanding of the rules.

The trial court admonished appellant about the applicable punishment range, and how that range could be affected if the prosecution proved its enhancement allegations. The trial court also admonished appellant that he would be able to confer with standby counsel.

The record shows that appellant was warned of the dangers and disadvantages of self-representation. And nothing in the record suggests that appellant's waiver of the right to counsel was coerced. The record accordingly supports the trial court's implied finding that appellant's waiver was intelligent and voluntary. *See Fletcher*, 474 S.W.3d at 397.

Appellant counters that his waiver was ineffective because it was made with the jury waiting outside in the hallway, and because he was proceeding without much preparation. But preparedness is not a consideration when deciding whether a waiver was intelligent and voluntary. *See Faretta*, 422 U.S. at 834 (stating that a defendant's choice to represent himself must be honored "although he may conduct his own defense ultimately to his own detriment").

Appellant also criticizes his waiver for not being in writing, but a written waiver is not required either. *See Burgess v. State*, 816 S.W.2d 424, 429 (Tex. Crim. App. 1991).

Appellant lastly suggests that his waiver was ineffective because some of his answers to the trial court's questions were nonsensical. He highlights the following exchange in particular:

Court:    Now, [appellant], I want to go over your charges. You're charged with the offense of murder. Do you understand that?

Appellant:    Yeah. Is there any way—is there any way I can object to the murder and plead or get a lesser offense at this season, at this moment?

Appellant argues that this exchange exemplifies his "total lack of understanding of the nature of the proceedings." But the trial court could have reasonably determined that this exchange merely showed that appellant was unfamiliar with the rules of procedure, which does not defeat an otherwise valid waiver. *See Faretta*, 422 U.S. at 836 ("For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.").

For all of the foregoing reasons, we conclude that the trial court did not abuse its discretion by granting appellant's request to waive his right to counsel.

### III.    EVIDENTIARY RULINGS

### A.    Investigator Testimony

An investigator testified that she interviewed appellant's mother at the scene of the murder, while a separate officer contemporaneously interviewed appellant's cousin and stepfather. The investigator also testified that she conferred with the other officer after their respective interviews were completed.

Following this testimony, the prosecution asked the investigator if she had learned, after her conference with the officer, whether the complainant had been

aggressive on the day of the murder. The defense lodged a hearsay objection, which the trial court overruled, and the investigator responded that she had learned that the complainant had not been aggressive. The investigator also added that appellant was the only person who had been in possession of a weapon. The defense objected to that answer on hearsay grounds as well, but the trial court overruled that objection too.

Appellant now challenges the trial court's rulings on his hearsay objections.

For the sake of argument only, we will assume without deciding that the trial court erred by overruling appellant's objections and by admitting the challenged testimony. The question then becomes whether admission of this testimony was reversible under the standard for nonconstitutional error. *See Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("The admission of inadmissible hearsay constitutes nonconstitutional error . . . .").

Nonconstitutional error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight effect on the verdict, the error is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

The erroneous admission of evidence does not generally have a substantial and injurious effect—and, thus, is generally not reversible—if the same or similar evidence is admitted without objection at another point in the trial. *See Linney v. State*, 401 S.W.3d 764, 780 (Tex. App.—Houston [14th Dist.] 2013), *pet. ref'd*, 413 S.W.3d 766 (Tex. Crim. App. 2013). That rule applies here. Before the investigator had even taken the stand, appellant's cousin had testified that the complainant was unarmed and had done nothing to provoke appellant or to cause appellant to use

deadly force. Because the cousin's testimony was properly admitted without objection and was the same as or similar to the testimony from the investigator, any improper admission of testimony from the investigator could not have been harmful. *See Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that the improper admission of testimony from a forensic interviewer was harmless because the same or similar testimony was properly admitted by the child complainant's mother).

**B.      Mental Health History**

Before any evidence was presented, the trial court granted a motion in limine, and ordered the defense to refrain from mentioning or referring to any evidence that appellant had a mental health diagnosis, illness, or disorder. Twice during the trial, the defense approached the bench and asked the trial court to reconsider this ruling.

The first time occurred immediately after standby counsel was put back on the case. While outside the presence of the jury, counsel sought to elicit unspecified testimony about appellant's mental health from appellant's cousin. As counsel explained, the cousin was aware of appellant's mental health issues, and those issues were relevant to appellant's relationship with the complainant.

The prosecution objected to counsel's request and expressed a concern that counsel was attempting to present a defense of diminished capacity, which is not recognized in Texas, short of the insanity defense. According to the prosecution, appellant's mental health was not relevant in any way to the offense, and it was purely a mitigation issue to consider during punishment.

The trial court agreed with the prosecution and sustained the objection.

11

The second time occurred when appellant was testifying in his own defense. Counsel approached the bench and asked to present evidence of appellant's mental health, reasoning that appellant was a witness and his credibility was at issue.

The prosecution renewed its earlier objection, arguing that appellant's mental health was not relevant during the guilt phase of trial because he was not claiming the insanity defense.

The trial court sustained the objection again.

Appellant now argues that the trial court abused its discretion by excluding the evidence of his mental health history. The State counters that appellant failed to preserve this issue for appellate review. We agree with the State.

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must make "an offer of proof" that sets forth the substance of the proffered evidence, unless the substance was apparent from the context. *See* Tex. R. Evid. 103(a)(2). The offer of proof may be in question-and-answer format, or it may consist of a concise statement by counsel. *See Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). If in the form of a statement, counsel "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Id.*

In this case, counsel did not specify the evidence of mental health that she sought to introduce, nor did counsel proffer a reasonably specific summary of the evidence. There was also no explanation from counsel as to how the evidence might negate the culpable *mens rea* and support a failure-of-proof defense, which, in the absence of an insanity defense, is the only way that the evidence could have been relevant and admissible. *See Jackson v. State*, 160 S.W.3d 568, 573–75 (Tex. Crim.

App. 2005). Because counsel did not proffer with any degree of specificity the substantive evidence that she intended to present regarding appellant's mental health history, or its impact on appellant's mental state at the time of the offense, we conclude that any error in the exclusion of such evidence has not been preserved. *See Mays v. State*, 285 S.W.3d 884, 890–91 (Tex. Crim. App. 2009).

## IV.   CLOSING ARGUMENTS

Counsel focused on the issue of self-defense in her closing arguments, and she encouraged the jury to think of appellant's troubled history with the complainant when deciding whether appellant's use of deadly force was justifiable. Her arguments led to an objection from the prosecution, which the trial court sustained. We reproduce the material portions of the closing arguments here:

Defense:   So when you're looking at his standpoint from his viewpoint and you're standing in his shoes, those are the things that this charge tells you, you must consider.

[Appellant], he let it all hang out from representing himself to testifying. You heard it all. He's previously stabbed [the complainant]. He went to prison for it. You heard everything.

And after he gets out of prison, his mother thinks that it's a great idea to put [the complainant] and [appellant] in the same house. The State's going to argue, well, he just wanted a nice house to live in. You know, when you have to choose between a roof overhead and sleeping on the street, that's a really, really tough decision.

But they're all in there in this pressure cooker, and what was probably inevitable happened. When [appellant] tells you that he sees [the complainant] and [the complainant] smiles at him, they're going to get up and ridicule that. [The prosecution] already has. Oh, well, that's not justification. Maybe that's not what you would do, but it's what [appellant] perceived.

And when [the complainant], the person who tormented him his entire life, who physically assaulted his mother, who caused them to go into foster care, and he's smirking, standing there, knowing that he can continue to live there, that he can aggravate, annoy, and inflame the situation and that his mother is never going to take his side, he saw that as danger.

And what did his mind, shaped by his childhood at the hands of [the complainant], think? What did he think? "He's going to get me when I go to sleep, like all the other times before."

One of the things that this charge says is on page 4 at the bottom: "When a person is attacked with unlawful deadly force or he reasonably believes that he's under attack or attempted attack and there is created in the mind of such person a reasonable expectation of fear or of death or serious bodily injury."

Sexual assault is serious bodily injury. And that's what he thought would happen. We don't know how the mind plays tricks on you. And we don't know how and the things that occurred between [the complainant] and [appellant]. That is real trauma.

I promise you, if the shoe were on the other foot, the State would be arguing about all the extensive trauma in a sexual abuse case—

State:       Objection. Improper argument.

Court:       Sustained.

Defense:     Every single day, cases are tried down here involving sexual assault of children.

State:       Objection. Improper argument.

Court:       Sustained. Argue the evidence, reasonable inferences from the evidence—

Defense:     I am arguing his state of mind, Your Honor.

Court:       —(inaudible) you know what the evidence is.

Appellant now argues that the trial court's rulings improperly limited the scope of closing argument and denied him the effective assistance of his counsel.

The improper denial of closing argument may constitute a denial of the right to counsel, but that assumes that the argument was permissible in the first place. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). Argument is permissible if it falls into one of four categories: (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to an argument from opposing counsel; and (4) a plea for law enforcement. *See Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

Appellant asserts that his counsel's argument fell into the first two of these categories. More specifically, he believes that counsel was making a summation of the evidence when she referenced appellant's history of childhood trauma, and that counsel made a reasonable inference from the evidence when she stated that this history shaped appellant's perception of events on the day of the stabbing. We agree that these arguments were permissible, but the prosecution did not object to these arguments, and the trial court did not preclude counsel from making them. Instead, the prosecution objected to counsel's statements regarding events that might occur in unrelated prosecutions for sexual assault. Those statements did not fall into any category of permissible argument. *See Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010) ("Argument that attempts to introduce matters not in the record is clearly improper."), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). Indeed, appellant has not even addressed how those statements could be permissible arguments in his brief.

We conclude that the trial court did not abuse its discretion by sustaining the prosecution's objection to counsel's closing argument. That conclusion likewise

means that the trial court did not improperly deprive appellant of the effective assistance of counsel.

## V.    CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Spain and Hassan. (Spain, J., concurring).

Do Not Publish — Tex. R. App. P. 47.2(b).